This is a suit for the surrender and cancellation of two chattel mortgages and the notes secured thereby, as well as for damages for breach of the contract under which the chattel mortgages were given. Complainants are makers of dresses, and defendant is a dress trucker. They entered into an agreement for the purpose of getting control of a corporation, in business as dress jobbers. This was with the idea that complainants could obtain contracts from the jobbers for the manufacture of dresses, and defendant could increase his trucking business by the transportation of the dresses. The complainants, between them, agreed to put up the sum of $5,000, which was to be matched by defendant and by *Page 184 
one Discorfano. Complainants were unable to furnish all the money in cash, and the balance was advanced by defendant, who took the notes and chattel mortgages in suit as security. The jobbing business was taken over by defendant and was operated by him for a considerable period of time, but turned out to be a failure and he not only lost his investment but a considerable amount besides. It is the contention of the complainants that, upon oral agreement between all the parties, defendant agreed to purchase for $15,000 all the stock of the jobbing corporation, then existing as "Bill Spear Frocks, Inc.," and to issue $5,000 thereof to the complainants. In fact, no stock was ever issued to complainants, either in this corporation or in its successor "Bill Spear Lenny Rosenzweig, Inc."
The difficulty with complainants' contention is that the agreement between the parties as to the joint enterprise into which they entered was reduced to writing in a formal agreement, and that complainants are bound by the terms thereof under the familiar doctrine of merger of all prior negotiations into a subsequent written contract. Naumberg v. Young44 N.J. Law 331. The formal contract contains no requirement that any stock was to be issued to complainants and, in fact, contains several references to show that defendant was to keep control of the stock. The agreement, in substance, provides that complainants, defendant and Discorfano shall share the net profits, including salaries paid to defendant or Discorfano, of any and all "net profits, dividends or bonuses which may be declared to Tony Masterpole [the defendant] by Bill Spear Lenny Rosenzweig, Inc., by reason of the fact that said Tony Masterpole owns or will own one-half of the outstanding stock or shares of the said Bill Spear Lenny Rosenzweig, Inc." The contract further provides: "this agreement shall not divest the said Tony Masterpole * * * of his rights to sell or assign the said stock or shares issued or to be issued to the said Tony Masterpole by the proper officers of the Bill Spear Lenny Rosenzweig, Inc."
Complainants also raise the point that defendant did not take any stock in the corporation in his own name, but it *Page 185 
was placed in the name of Anthony Salerno, who held it nominally in his name, but actually for the defendant. It was explained that this was done because it was not considered the right thing for a trucker to have an interest in a dress jobber. Complainants knew that Salerno was to act as a dummy, and, in any event, it would seem that defendant had the right to have the stock held in Salerno's name, under the clause of the contract already quoted giving him the right to assign the stock.
I can find no merit in complainants' case. It seems clear that they and the defendant went into a joint venture, expecting that they would profit, and defendant not only provided his share of the funds but also advanced part of the complainants' share, and after operating for almost two years under a written contract complainants now seek to avoid all responsibility when the venture became a failure.
A decree will be advised dismissing the complaint and granting the prayer of the counter-claim for the amounts of the balances due, including interest, on the notes secured by the chattel mortgages. *Page 186